IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARQUIS ROBINSON, | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| SELF HELF MOVEMENT, *et al.*, | : | No. 24-CV-6782 |
| *Defendants*. | : | |

MEMORANDUM

KENNEY, J.                                                                                    April 2, 2026

Pending before the Court are two motions: Plaintiff Marquis Robinson's Moton for Summary Judgment (ECF No. 62) and Defendants Self Help Movement, Kelly Korzen, John Cooper, and Collen Brubaker's (collectively, "Defendants") Motion for Summary Judgment. ECF No. 65. For the reasons set forth below, Plaintiff's Motion (ECF No. 62) will be **DENIED** and Defendants' Motion (ECF No. 65) will be **GRANTED**.

I.        INTRODUCTION

On December 19, 2024, Plaintiff, proceeding *pro se*,[1] filed a form complaint against Defendants Self Help Movement, Robert Dellavella, Kelly Korzen, John Cooper, and Collen Brubaker.[2] ECF No. 2. Plaintiff's complaint sets forth claims for failure to promote, failure to stop harassment, unequal terms and conditions of employment, retaliation, and discrimination and

---

[1] On February 13, 2025, Plaintiff filed a Motion to Appoint Counsel. ECF No. 10. The Court granted in part and denied in part Plaintiffs Motion on April 3, 2025. ECF No. 18. The Court stayed the case for 90 days while the case was placed on the Court's extranet site for review by attorneys who are members of the Court's Attorney Panel for *Pro Se* Plaintiffs in employment discrimination cases (the "Panel"). *Id*. at 1. After the 90 days elapsed, on July 10, 2025, the Court removed the case from the Panel because no attorney volunteered to accept appointment, and removed the case from stay. ECF No. 29 at 1.

[2] The Court has since terminated Defendant Robert N. Dellavella because there were no pending claims against him. ECF No. 29 at 1.

bullying based on race, color, gender/sex, and age. *Id.* Plaintiff brings his claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 (the "ADEA"), and the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. §§ 951–63 (1955). (the "PHRA"). *See id.* Along with his complaint, Plaintiff also filed a Motion to Proceed *in forma pauperis* ("IFP"). ECF No. 1. Plaintiff's Motion to Proceed IFP was granted on January 21, 2025. ECF No. 7. Thereafter, the Parties joined issue, ECF Nos. 13–16, and Plaintiff began filing a series of letters with the Court to express his desire to avoid pre-trial dismissal and describing his underlying claims. *See, e.g.*, ECF No. 21 (Letter Dated April 8, 2025); ECF No. 22 (Letter Dated April 4, 2205); ECF No. 30 (Letter Dated July 14, 2025). A Scheduling Order was entered on July 28, 2025. ECF No. 34.

At the close of fact discovery, and with the deadline to file dispositive motions approaching, *see id.*, Defendants sought an extension of time to file a motion for summary judgment. ECF No. 56. That Motion was granted on December 31, 2025. ECF No. 57. Perhaps under the mistaken belief that Defendants had already moved for summary judgment, Plaintiff filed a document titled "Opposition to Summary Judgment." ECF No. 61. Along with his opposition, Plaintiff also filed a document titled "Motion for Summary Judgment" on January 5, 2026. ECF No. 62.

Following his apparent Motion for Summary Judgment, Plaintiff filed an additional motion document titled, "Dispositive Motion," ECF No. 63,[3] as well as a notice of Voluntary Dismissal

---

[3] In this filing, Plaintiff expresses his concern that Defendants "don't want to go to trial," and that states that Defendants' attorney falsely stated that Plaintiff did not file with the "Human Relations Commission." ECF No. 63 at 1. Plaintiff goes on to state that he was "drilled . . . for almost 5-hours, [with] 4-breaks[,] under oath[.]" *Id.* Plaintiff requests that Defendants, too, by placed under oath and take the stand. *Id.* Plaintiff also requests that Defendants' counsel, Paul G. Lees be required to take the stand. *Id.* at 2. Plaintiff includes that he is still "open to negotiation." *Id.*

withdrawing his complaint against Colleen Brubaker.[4]  ECF No. 64.

On January 12, 2026, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule(s)") 56.  ECF No. 65.  Plaintiff filed more opposition papers—this time addressing Defendants' Motion.  ECF Nos. 68; 73.  After Defendants filed their Motion for Summary Judgment (ECF No. 65), Plaintiff began filing a series of discovery motions with the Court.  *See* ECF No. 66 (Plaintiff's Motion for Production of Documents, Notice of Subpoena Motion for Issuance of Subpoena, Redaction), ECF No. 69 (Plaintiff's Motion to Compel Financial Disclosure), ECF No. 70 (Plaintiff's Motion to Compel Production of Documents), ECF No. 71 (Plaintiff's Motion to Asset Whistleblower Retaliation Protection), and ECF No. 72 (Plaintiff's Motion to Compel Discovery Court Order to Show Evidence).

On January 29, 202, after carefully reviewing each of Plaintiff's submissions on the docket, the Court addressed each of Plaintiff's requests.  ECF No. 74.  The Court *inter alia* denied Plaintiff's "Dispositive Motion" (ECF No. 63) as premature,[5] denied in part as moot and otherwise denied Plaintiff's Motion for Production of Documents, Notice of Subpoena, Motion for Issuance of Subpoena, and Redaction, (ECF No. 66),[6] denied Plaintiff's Motion to Compel Financial

---

[4] In his Notice, Plaintiff states that he wants to "withdraw [his] complaint, against Colleen Brubaker director of (SHM) even with all the evidence you have, I got to withdraw because I'm in federal court with (SHM) going to trial and someone scared me, so I want to withdraw."  ECF No. 64 at 1.  Brubaker has continued to actively defend herself in this lawsuit.  *See* ECF No. 65-3; 89.  Accordingly, the Court has deemed Brubaker as an active defendant to the litigation.

[5] The Court determined that Plaintiff's requests to call certain witnesses at trial, *see supra* at n.4, were "premature because the Court must first decide the Parties' motions for summary judgment, which will determine whether this case proceeds to trial."  ECF No. 74 at n.1. The Court determined that to the extent that Plaintiff sought to *depose* the same individuals, Plaintiff had not made the same request or made arrangements to pay for the cost of such depositions prior to the close of discovery.  *Id*.

[6] The Court determined that the discovery dispute was largely rendered moot because Defendants had, since the date Plaintiff filed his Motion (ECF No. 66), produced the documents Plaintiff was seeking and resolved those parts of Plaintiff's Motion.  ECF No. 74 at n.1. Specifically, the Court

Disclosure (ECF No. 69),[7] granted in part and denied in part Plaintiff's Motion to Compel

Production of Documents (ECF No. 70),[8] denied Plaintiff's Motion to Asset Whistleblower

Retaliation Protection (ECF No. 71),[9] and denied Plaintiff's Motion to Compel Discovery Court

Order to Show Evidence (ECF No. 72).[10]

Plaintiff continued to file more discovery requests for the Court's consideration. *See* ECF

No. 76 (Marquis Robinson Motion to Compel Production of Defendants Criminal History

Involving Dishonesty, Fraud and Violence). Plaintiff's Motion to Compel (ECF No. 76) was

denied.[11] Plaintiff continued to ask the Court to compel Defendants to disclose additional

---

concluded that Defendants had produced an incident reports concerning Self Help Movement
Resident making inflammatory and hostile remarks about Plaintiff and Plaintiff's Mother (ECF
No. 67-2 at 2-3) and an incident report documenting that Plaintiff and other Self Help Movement
staff discovered a gun in a resident's room (ECF No. 67-2 at 2). *Id.* The Court determined that
Defendants were unable to produce the other materials Plaintiff requested and that in any event,
Plaintiff's requests for the outstanding documents were untimely. *Id.*

[7] The Court denied Plaintiff's Motion to Compel Financial Disclosures (ECF No. 69) on the basis
that Plaintiff's discovery requests were untimely because they were made "long after the deadline
for fact discovery and after the parties filed motion for summary judgment." ECF No. 74 at n.1.
The Court determined that even if the requests were not untimely, that the "sweeping examination
of Defendant Self Help Movement's financial documents" was not relevant to Plaintiff's claims
of discrimination or proportional to the needs of the case. *Id.* The Court further concluded that
should the issue of punitive damages come up if the case survives summary judgment, that the
Court could revisit the issue of discovering this information. *Id.* For the reasons set forth below,
the Court need not revisit this issue.

[8] The Court granted Plaintiff's Motion (ECF No. 70) to the extent that it requested the attached
materials to be considered part of the record and otherwise denied the Motion. ECF No. 74 at
n.1.

[9] The Court denied this Motion (ECF No. 71) because it did not seek any relief from the Court.
ECF No. 74 at n.1.

[10] The Court also denied this Motion (ECF No. 72) because it did not seek any relief from the
Court. ECF No. 74 at n.1.

[11] The Court determined that though "evidence of a criminal conviction can be used to attach a
witness's character for truthfulness," Plaintiff's request that Defendants' be compelled to produce
their criminal history records was untimely. ECF No. 77 at n.1. The Court concluded that the issue

4

documents.  *See* ECF No. 78 (Motion to Permit News Media and Press Access to Trial), ECF No. 79 (Motion to Compel Production of Records Regarding African American Employess [sic] Resignation and Terminations), ECF No. 80 (Motion to Compel Disclosure of Defendants Criminal Conviction History), ECF No. 81 (Motion for In Camera Review of Medical Records). The Court responded to Plaintiff's latest requests on February 6, 2026.  ECF No. 82.  This time, the Court denied each of Plaintiff's Motions (ECF Nos. 78–81).[12]  *Id.*

Without missing a beat, Plaintiff continued to file another series of requests.  *See* ECF No. 83 (Motion for a Settlement Conference), ECF No. 84 (Motion for the Court's Respectful Consideration), ECF No. 85 (Motion to Supplement the Record with Character Reference from Current Employer), and ECF No. 86 (Final Motion for Summary Judgment).[13]  After a careful review of Plaintiff's filings, the Court denied Plaintiff's Motion for the Court's Respectful

---

could be revisited if the case were to proceed to trial.  *Id.*  For the reasons set forth below, the Court need not revisit this issue.

[12] The Court denied Plaintiff's Motion to Permit News Media and Press Access to Trial (ECF No. 78) as unnecessary.  ECF No. 82 at 1.  The Court denied Plaintiff's Motion to Compel Production of Records (ECF No. 79) as untimely, because there was no indication that Plaintiff had previously sought "records regarding African American employees' resignations and terminations" from Defendants or that Plaintiff ever sought additional time for discovery.  *Id.* at 1 n.1.  The Court denied Plaintiff's Motion to Compel Disclosure of Defendants' Criminal History (ECF No. 80) for the reasons set forth in the Court's January 30, 2026 Order (ECF No. 77).  *Id.* at 2 n.2.  The Court denied Plaintiff's Motion for In Camera Review of Medical Records (ECF No. 81) because (1) Plaintiff's medical and psychological records were not privileged; and (2) the request for *in camera* review was premature ahead of the Court's disposition of the Parties' motions for summary judgment.  *Id.* at 2 n.3.

[13] Upon a careful review of Plaintiff's Final Motion for Summary Judgment (ECF No. 86), the Court finds that Plaintiff's filing titled "Final Motion for Summary Judgment," ECF No. 86, actually raises arguments in *opposition* to Defendants' Motion for Summary Judgment.  *See* ECF No. 86 at 1 ("No reasonable jury could find in favor of the Defendants based on evidence.").  Therefore, the Court will construe this filing as a sur-reply to Defendants' Motion for Summary Judgment (ECF No. 65).  *See Castro v. U.S.*, 540 U.S. 375, 381–82 (2003) (holding that—with the exception a § 2255 motion—district courts may "ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category" (collecting cases).

Consideration (ECF No. 84) and Plaintiff's Motion to Supplement the Record (ECF No. 85) on February 17, 2026.[14]  ECF No. 87.

The same day, Plaintiff began filing another series of requests with the Court.  *See* ECF No. 88 (Motion to Recognize Defendant's Admissions as Undisputed Facts),[15] ECF No. 90 (Exhibits),[16] ECF No. 91 (Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment), ECF No. 92 (Letter to Chambers Dated 2/27/26),[17] ECF No. 93 ("Statement"),[18] ECF No. 94 (Final PreTrial Memorandum), ECF No. 95 (Proposed Verdict Form),[19] ECF No. 96 (Affidavit),[20] and ECF No. 97 (Letter).[21]  Accordingly, the matter has been fully briefed and will be considered on the basis of the submissions, without oral argument.

---

[14] The Court denied Plaintiff's Motion (ECF No. 84) to the extent that it sought any relief from the Court.  ECF No. 87 at 1 n.1.  The Court denied Plaintiff's Motion to Supplement the Record (ECF No. 85) as both untimely and irrelevant to Plaintiff's claims against Defendants.  *Id.* at 1 n.2.

[15] Plaintiff's Motion merely summarizes various "admissions" or statements contained in Defendants' Motion for Summary Judgment and supporting exhibits and/or affidavits.  ECF No. 88 at 1–2.

[16] Like the filing discussed *supra* at n.15, the "Exhibits" filed by Plaintiff are comprised of highlighted portions of Defendant Brubaker's Affidavit submitted in support of Defendants' Motion for Summary Judgment (ECF No. 65-10 at 2–3).  ECF No. 90 at 2–3.

[17] In his Letter to Chambers, Plaintiff reaffirms his position that he has suffered sexual harassment and discrimination at the hands of Defendants.  ECF No. 92 at 1–2.

[18] In his "Statement" to the Court, Plaintiff comments on the negative implications of "paying under the table" and states that Defendant Cooper admitted in "court papers" to removing Plaintiff from company property to perform "personal security/bodyguard work" and paid him "cash under the table[.]"  ECF No. 93 at 1.

[19] The Court will not consider Plaintiff's Final Pre-Trial Memorandum (ECF NO. 94) or Proposed Verdict Form (ECF No. 95) as they are premature at this juncture.

[20] In his Affidavit, Plaintiff states that he was present in the courtroom on March 30, 2026 for trial.  ECF No. 96 at 1.

[21] Plaintiff's Letter disputes Defendants' argument that Plaintiff's EEOC complaint was untimely. The Court addresses the issue of timeliness *infra* at Part IV(B)(1).

II.    **FACTUAL BACKGROUND**[22]

Self Help Movement is located at the site of the former Philadelphia State Hospital in Byberry, Philadelphia.  ECF No. 65-3 (Defendants' Statement of Facts in Support of Summary Judgment) ¶ 2.  Self Help Movement was founded as an outpatient drug rehabilitation program for adult male probationers, but has since expanded to provide inpatient and other drug and alcohol treatment programs.  *Id.*

**A. Plaintiff's Treatment and Employment with Self Help Movement**

Plaintiff became affiliated with Self Help Movement when he was a participant in their drug addiction rehabilitation programs to treat his heroin addiction.  ECF No. 65-3 ¶ 3.  During his deposition, Plaintiff described both of his stays at Self Help Movement in their inpatient detox program: first Plaintiff stayed in a halfway house for approximately six months in 2016.  ECF No. 65-5 at 32–34.  Later, Plaintiff participated in a second inpatient detox program again for his heroin addiction in 2020.  *Id.* at 33–34.  Plaintiff's second stay lasted for almost five years including time in the halfway house and transitional living facility ("TLF") on the second and third floors.  *Id.* at 34.

During his second stay, Plaintiff was encouraged to apply for a job with Self Help Movement by the director of Self Help Movement, Defendant John Cooper.  ECF No. 65-3 ¶ 4.  After applying for a position, Plaintiff was offered—and accepted—a position as a part-time Resident Monitor ("RM") on June 11, 2020.  ECF No. 65-3 ¶ 5; ECF No. 65-6 at 3.

---

[22] As discussed *infra* at Part IV, Plaintiff has not supplied his own statement of material facts in support of his Motion for Summary Judgment (ECF No. 62).  Accordingly, the following facts are taken from Defendants' Statement of Facts in Support of Summary Judgment (ECF No. 65-3) to the extent those facts are well-supported by pinpoint citations to the record.  *See* Fed. R. Civ. P. 56(c)(1); *see also Ullrich v. U.S. Sec. of Veterans Affairs*, 457 Fed. Appx. 132, 137 (3d Cir. 2012) ("Rule 56 explicitly requires the party asserting the absence or existence of a genuinely disputed fact to support that assertion by citing to specific parts of the record." (citing Fed. R. Civ. P. 56(c)(1)).

Plaintiff initially worked in a program that was operated by the Department of Corrections ("DOC") for male parolees. ECF No. 65-3 ¶ 8. The program was operated in a different building on Self Help Movement's grounds. *Id.* However, Plaintiff ultimately lost his clearance to continue working in the DOC program after he assaulted one of the program participants.[23] *Id.*; ECF No. 65-7 (Affidavit of John Cooper) ¶¶ 6–7; ECF No. 65-8 (Affidavit of Hilda Krekevich) ¶¶ 4–5. As a result of the incident, Plaintiff was placed in an anger management course and moved to work as a RM for Self Help Movement on the first floor of the inpatient facility. ECF No. 65-3 ¶¶ 9–10. At this time, Plaintiff began working full-time as an RM for Self Help Movement. *Id.* ¶ 9.

As an RM on the first-floor inpatient facility, Plaintiff was responsible for monitoring the front entrance as well as searching and breathalyzing clients and residents as they entered the building. ECF No. 65-3 ¶ 10. Plaintiff reported directly to Kelly Korzen. *Id.* ¶ 11. Korzen worked as the Assistant to the Director of Operations, John Cooper, at Self Help Movement. ECF No. 65-9 ¶¶ 2–5. As Assistant to the Director of Operations, Korzen directly oversaw the RMs, performed the RM scheduling, completed the RM performance evaluations and reviews, and was responsible for handling any RM disciplinary actions. *See* ECF No. 65-3. ¶ 11.

### B. Plaintiff's Interactions with Colleen Brubaker

Plaintiff worked with Clinical Director at Self Help Movement, Colleen Brubaker. ECF No. 65-3 ¶ 21. As coworkers, Plaintiff and Brubaker were friendly. *Id.* ¶ 22. As a Clinical Director, Brubaker oversaw the treatment programs but did not supervise or oversee the RMs. *Id.* As relevant to the litigation, Brubaker utilized a "standing desk" in the office to manage backpain she experienced from sitting for too long during the day. *Id.*

---

[23] Plaintiff described the incident during his deposition. *See* ECF No. 65-5 at 52–53. Plaintiff described that a participant—of whom other staff members were frightened—spit on Plaintiff and that in response, Plaintiff "dropped him right where he [stood]." *Id.* at 52.

In or around August 2023, Brubaker asked Plaintiff if he would "crack her back," or stand behind Brubaker while her arms were crossed and lift her up and squeeze her to "crack" her back. *Id.* Plaintiff obliged. *Id.* In total, Plaintiff "cracked" Brubaker's back approximately seven or eight times, upon request, over the course of his employment with Self Help Movement. ECF No. 65-3 ¶ 23; ECF No. 65-5 at 87. This was done in full view of other Self Help employees. *Id.* ¶ 23.

### C. Plaintiff Does Not Receive a Desired Shift Reassignment

Though the Parties dispute when, at some point during Plaintiff's tenure with Self Help Movement, another RM for Self Help Movement, Fred Carbonara, retired. ECF No. 65-3 ¶ 12. Carbonara worked the second shift on the TLF quarters located on the third floor. *Id.* Plaintiff expressed interest in assuming Mr. Carbonara's assignment on the third floor. *Id.* ¶ 13. During his deposition, Plaintiff explained that though he did not formally apply for the position, his interest was communicated via "word of mouth." ECF No. 65-5 at 101.

But Plaintiff was not reassigned to the TLF quarters on the third floor like he wanted. ECF No. 65-3 ¶ 14. The shift was instead assigned to another RM, Christoper Lind. *Id.* Mr. Lind, a Caucasian male, had been working for Self Help Movement for approximately five months when he was reassigned to the TLF floor shift. *See id.* ¶ 15.

The Parties dispute whether the TLF shift position was a "promotion." *See* ECF No. 65-3 ¶ 16; ECF No. 65-9 ¶ 9; ECF No. 65-5 at 102. However, when Link started his assignment on the TLF floor, he was compensated $15/hour—the same as Plaintiff. *See* ECF No. 65-3 ¶ 16; ECF No. 65-9 ¶ 9. In addition, the TLF floor shift, like Plaintiff's shift, was a second shift. ECF No. 65-3 ¶ 16. However, the TLF floor shift required the RM to work weekends, whereas Plaintiff's shift ran from Monday through Fridays only. *See id.*

Defendant Kelly Korzen was the individual who made the decision to reassign Christopher

9

Lind, and not Plaintiff, to the TLF floor shift.  ECF No. 65-3 ¶ 17.  Her decision was immediately approved by Director of Operations, Defendant John Cooper.  *Id.*  Defendant Cooper determined that Plaintiff was a better fit for the *first* floor shift because he was skilled at screening and searching the residents as they entered the building.  *Id.* ¶ 18.  Plaintiff is 6'4 and weighs approximately 290 lbs.  ECF No. 65-3 ¶ 19; ECF No. 65-5 at 94–95.  During his deposition, Plaintiff explained that during his first floor shift, he screened clients who were larger individuals, who were loud, and who were aggressive.  ECF No. 65-5 at 94.  Plaintiff testified that he was the biggest RM working for Self Help Movement at that time, and that his relative size helped him to keep folks "under control" on the first floor.  *See* ECF No. 65-5 at 94–95.  After Plaintiff's request to be reassigned was denied, Defendant Cooper told Plaintiff that he felt that Plaintiff's skills would have been "wasted" had he been transferred from the first floor.  *See id.*; ECF No. 65-5 at 105.

**D.  John Cooper's Invitations to Plaintiff to Accept Additional Work as a Bouncer**

Prior to working as an RM for Self Help Movement, Plaintiff worked as a bouncer providing security at local bars and nightclubs.  ECF No. 65-3 ¶ 19; ECF No. 65-6 at 2.  As discussed *supra* at Part II(B), Plaintiff is a "physically large man[,]" at 6'4 tall and weighing approximately 290 lbs.  ECF No. 65-3 ¶ 19.  On occasion, Mr. Cooper would offer Plaintiff the opportunity to do security work outside of Self Help Movement.  *Id.* ¶ 19.[24]  This was not work for Self Help Movement.  *Id.*  The work was paid and was voluntary.  *Id.*  Plaintiff often inquired with Defendant Cooper if there was more security work available for him outside Self Help Movement.  *Id.*

In his deposition, Plaintiff expressed that he felt he was "bullied" into doing outside work

---

[24] This paragraph is erroneously marked as Paragraph No. 19.  *See* ECF No. 65-3 ¶ 19, 19.

by Defendant Cooper. ECF No. 65-3 at 128–29.  Plaintiff explained that unlike some other Self Help Movement employees who were not residents, he was available for Cooper to ask him to help with various tasks while he was off duty.  *Id.*  Defendant Cooper states that he believed he was helping Plaintiff out by providing him with additional sources of income and that he never suggested to Plaintiff that he *expected* him to do the work.  ECF No. 65-7 ¶ 12.

### E.  Plaintiff's Career Change and Resignation from Self Help Movement

Sometime in 2023, while still employed for Self Help Movement, Plaintiff began taking a twelve-week course to obtain his commercial drivers' license ("CDL").  ECF No. 65-4 ¶ 27.  The course, which was taught by the Solomon Trucking School at their location in Philadelphia, was offered through Self Help Movement.  *Id.*; ECF No .65-5 at 18.  Through this program, Plaintiff obtained his CDL.  ECF No. 65-3 ¶ 28.  Plaintiff later became employed as a truck driver.  *Id.* ¶ 29.  On January 26, 2024, Plaintiff resigned from Self Help Movement.  *Id.* ¶ 30.  Plaintiff stated in his resignation letter that he was "allowing [him]self to venture out and explore a different career path. . . ."  *Id.*  His last day was February 5, 2024.  *Id.*

### F.  Plaintiff's EEOC Charge

On May 21, 2024 Plaintiff filed a charge of discrimination on the basis of race and sex with the Equal Employment Opportunity Commission (the "EEOC") and the Pennsylvania Human Relations Commission.  ECF No. 65-3 ¶¶ 33–36; ECF No. 65-11 at 11.  In his Charge of Discrimination, Plaintiff stated:

> I am an African American man. I have been employed by respondent since June of 2019 as a resident monitor. During my time of employment, I was discriminated against due to my race. On May 10, 2023, (told my supervisor of my Intentions to apply for new position, he stated he would inform management, I wanted to take on the position. Shortly after my supervisor notified Respondent to put made up for promotion, a Caucasian man with less experience and time with the company was hired in the position I applied for. I was frequently sexually harassed by my director. My Caucasian

female director is starting to act inappropriate at the workplace, by her making me crack her back and pressing on me, On August 7, 2023, I told human resources who did nothing to resolve the situation. when I told the director, I felt violated, and she told me she gets me fired if I did not comply. On January 6, 2024, Due to the lack of promotional opportunity and harassment I chose to constructively discharge myself from employment.

Respondent failed to resolve harassment in the workplace.

ECF No. 65-11 at 11. Plaintiff also stated that he was "discriminated against due to race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, with respect to harassment, sexually harassment, promotion, and constructive discharge." *Id.* at 12. Plaintiff received his Right to Sue Letter on November 21, 2024. ECF No. 3 at 1.

### III.    LEGAL STANDARD

On a motion for summary judgment, the court's role is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That is, the movant must show "that there is no genuine dispute as to any material fact," and that "the movant is entitled judgment as a matter of law." Fed. R. Civ. P. 56(a). As relevant here, a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" *Id.*

Where both plaintiff and defendant have moved for summary judgment, that "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). The normal standard "does not change when the issue is presented in the context of cross-motions for summary judgment." *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

12

## IV.    <u>DISCUSSION</u>

Currently pending before the Court there are two motions: Plaintiff's Motion for Summary Judgment (ECF No. 62) and Defendants' Motion for Summary Judgment (ECF No. 65).  Before turning to the merits of the Parties' respective motions, the Court has several housekeeping matters to attend to.

### A.  Initial Matters

#### 1.  Plaintiff's *Pro Se* Status Affords Him Special Solicitude

*First*, Plaintiff is proceeding *pro se*.  ECF No. 2.  Therefore, the Court must accord him special solicitude.  *See Berk v. Rothman Inst. Orthopedic Found.*, No. 24-2293, 2025 WL 1177253, at *2 (3d Cir. Apr. 23, 2026) ("we generally afford *pro se* litigants special solicitude in evaluating compliance with the federal rules[.]").  As part of that special solicitude, the Court must not penalize Plaintiff for erroneously labeling a particular filing.  *See id.*; *see also Castro*, 540 U.S. at 381–82 (holding that—with the exception a § 2255 motion—district courts may "ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category" (collecting cases)); *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), *as amended* (Sept. 19, 2011) ("Our policy of liberally construing *pro se* submissions is 'driven by the understanding that [i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006)).

#### 2.  Plaintiff has Abandoned His Age Discrimination Claims

*Next*, there is no dispute that Plaintiff's claim for age-based discrimination has been withdrawn.  *See* ECF No. 65-5 at 123.  In his deposition, Plaintiff acknowledged that he indicated

"age" as a basis for discrimination in "error." *See id.* Accordingly, this claim will be dismissed.

## B. Defendants' Motion for Summary Judgment Will Be Granted

Defendants have moved for summary judgment dismissing all of Plaintiff's claims. ECF No. 65. In his complaint, Plaintiffs asserts claims against Defendants under Title VII and the PHRA for "failure to promote," "failure to stop harassment, unequal terms and conditions of employment," "retaliation," and "discrimination and bullying based on race, color, and gender/sex."[25] ECF No. 2 at 4–8. Broadly construed, Plaintiff's complaint sets forth claims under Title VII and the PHRA for (1) hostile work environment; (2) disparate treatment on the basis of race; and (3) retaliation. *See id.*

### 1. Exhaustion of Administrative Remedies

Prior to filing a complaint in federal court, Title VII—and the PHRA—require that the plaintiff exhaust their administrative remedies first. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (first citing *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997); then citing *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006)). Title VII mandates that plaintiffs in a deferral state such as Pennsylvania must first file a complaint with the EEOC "within 300 days of the alleged unlawful employment practice." *Mandel*, 706 F.3d at 165 (citing 42 U.S.C. § 2000e–5(e)(1)). Whereas the PHRA requires that the plaintiff file a complaint with the Pennsylvania Human Relations Commission within "180 days of the alleged act of discrimination." *Id.* at 164 (citing 43 PA. CONS. STAT. § 959(h) (1997).

Upon review, the Court finds that Plaintiff has failed to exhaust his administrative remedies by filing a timely complaint with the EEOC and PHRA for his disparate treatment, bullying, and

---

[25] As discussed *supra* at Part IV(A)(2), Plaintiff has abandoned his age discrimination claim. Accordingly, the Court will dismiss Plaintiff's age-related claim arising under Title VII, the ADEA, and the PHRA.

retaliation claims.  Plaintiff filed one complaint with the EEOC and PHRA ("Plaintiff's EEOC complaint"), on May 21, 2024.  ECF No. No. 65-11 at 11–12.  Plaintiff's EEOC complaint contains charges of racial discrimination stemming from his failure to obtain the TLF floor shift, sexual harassment stemming from his interactions with Defendant Brubaker and her requests that Plaintiff "crack" her back, and his "constructive discharge" from Self Help Movement.  *See id.*  Plaintiff's EEOC complaint does not contain any allegations of retaliation,[26]  or about John Cooper or any alleged bullying.  Accordingly, Defendants' Motion for Summary Judgment will be granted as to these claims.

While Plaintiff included his disparate treatment claim in his EEOC complaint, Plaintiff's EEOC complaint for disparate treatment is untimely.  As discussed, the Parties *do* dispute when the decision to reassign Chris Lind instead of Plaintiff was made.  *See* ECF No. 65-3 ¶ 12; ECF No. 65-5 at 102.  On Plaintiff's version of the facts, Lind assumed the role in May 2023.  *See* ECF No. 65-5; ECF No. 65-11 at 11.  But even on Plaintiff's facts, a reasonable fact finder would be forced to find his claim is untimely because Plaintiff filed his EEOC complaint months after the deadline to do so had passed.  Therefore, no genuine disputes of material fact exist as to the issue of whether Plaintiff's claim for "failure to promote," or disparate treatment based upon race brought pursuant to Title VII and the PHRA, is untimely.  Accordingly, Defendants' Motion for Summary Judgment will be granted as to this claim.

Plaintiff's constructive discharge and hostile work environment claims are timely.  First, Plaintiff's constructive discharge claims are timely.  Plaintiff's constructive discharge claim accrued when he resigned.  *Green v. Brennan*, 578 U.S. 547, 554–55 (2016).  Plaintiff's last day was February 5, 2025.  ECF No. 65-3 ¶ 30.  Accordingly, his complaint was filed with the EEOC

---

[26] It is undisputed that when Plaintiff indicated "retaliation" in his Complaint, he was referring to his *fear* of retaliation.  ECF No. 65-5 at 127.

and the PHRC within the applicable time limits.

Plaintiff's hostile work environment claims are also timely.  Plaintiff's hostile work environment claims are subject to the continuing violation doctrine.  *Mandel*, 706 F.3d at 165–66. This is because hostile workplace claims are unlike disparate treatment claims.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  They are not based on single, discrete acts.  *See id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Instead, hostile work environment claims are based on an "aggregate," or, a series of discriminatory acts, which may not be actionable on their own.  *Mandel*, 706 F.3d at 165; *Id.* (citing *Harris*, 510 U.S. at 21). "Under the continuing violation doctrine, " discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim[.]"  *Mandel*, 706 F.3d at 165. So long as "at least one act falls within the applicable limitations period[,]" the *aggregate* of the claims is timely for the purposes of Title VII and the PHRA.  *Id.*  (citing *Morgan,* 536 U.S. 122, 122 (2022)).

Here, it is undisputed that Brubaker first began asking Plaintiff to "crack" her back in August 2023.  ECF No. 65-3 ¶¶ 22–23.  In total, Plaintiff "cracked" Brubaker's back for her at least seven or eight times, upon request, over the course of his employment.  ECF No. 65-3 ¶ 23; ECF No. 65-5 at 87.  Plaintiff's last day of work was February 5, 2024.  65-3 ¶ 30.  Therefore, assuming that Brubaker asked Plaintiff to "crack" her back on his last day of work, Plaintiff's hostile work environment claims are timely.

### 2. Summary Judgment Will Be Granted as to Plaintiff's Hostile Work Environment Claim

On the merits, Defendants argue that Plaintiff's hostile work environment claims under Title VII and the PHRA should be dismissed because it is undisputed that Brubaker's requests that Plaintiff "crack" her back were not sufficiently "severe" or "pervasive."  ECF No. 65-2 at 11–14.

16

At the outset, the Court notes that Plaintiff's hostile work environment claims brought under Title VII and the PHRA are analyzed under the same framework. *See Qin v. Vertex, Inc.*, 100 F.4th 458, 470 (3d Cir. 2024) ("We examine . . . Title VII, § 1981, and PHRA claims together because they fall under the same analytical framework."). As discussed, hostile work environment claims vary from other types of discrimination claims brought under Title VII and the PHRA. *See Morgan*, 536 U.S. at 115. To prove a claim for a hostile work environment, the plaintiff must show that: (1) "[he/she] suffered intentional discrimination because of his/her sex," (2) "the discrimination was severe or pervasive," (3) "the discrimination detrimentally affected the plaintiff," 4) "the discrimination would detrimentally affect a reasonable person in like circumstances," and 5) "the existence of *respondeat superior* liability." *Mandel*, 706 F.3d at 167 (citation omitted). This final element determines employer liability. *See Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). That is, "[t]he basis of an employer's liability for hostile environment sexual harassment depends on whether the harasser is the victim's supervisor or merely a coworker." *Huston*, 568 F.3d at 104 (citation omitted).

Upon review, Defendants' Motion for Summary Judgment (ECF No. 65) will be granted as to Plaintiff's hostile work environment claims. As an initial matter, it is clear that the Parties dispute the subjective aspect of Plaintiff's claims. *See* ECF No. 65-5 at 85–87. Plaintiff maintains that Brubaker's intentions were sexual in nature and that her advances detrimentally affected him. *See id.* However, the Court finds that Brubaker's conduct was neither sufficiently severe nor pervasive.

In determining whether conduct at issue is severe or pervasive, courts consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Qin*, 100 F.4th at 471 (citing *Harris*, 510 U.S. at 23). In applying

17

these factors to the present case, the Court notes that this analysis "is not, and by its nature cannot be, a mathematically precise test." *Harris*, 510 U.S. at 22.

Here, the undisputed facts are as follows: Brubaker was  not Plaintiff's supervisor, in fact, she was not a supervisor at all.  *See* ECF No. 65-3 ¶  22.  Brubaker suffers from backpain.  ECF No. 65-3 ¶ 22.  Plaintiff is 6'4 and weighed 290 lbs.  ECF No. 65-3 ¶ 19; ECF No. 65-5 at 94–95.  On approximately seven or eight occasions, Brubaker asked Plaintiff if he would "crack" her back, or wrap his arms around her with her arms crossed across her chest and lift her into the air to provide her with a spinal compression.  ECF No. 65-3 ¶ 22.  These interactions were all consensual and took place between August 2023 until the end of Plaintiff's employment with Self Help Movement.  *Id.* ¶ 23; ECF No. 65-5 at 87.  Moreover, these interactions occurred out in the open in front of other Self Help employees.  *See* ECF No. 65-3 ¶¶ 22–23.

This evidence, viewed as a whole, is plainly insufficient to satisfy the *objective* requirement that Plaintiff's work environment was permeated with severe or pervasive harassment.  *See Mandel*, 706 F.3d at 167 (citation omitted).  Brubaker's conduct was not sufficiently severe.  Brubaker requested Plaintiff "crack" her back.  ECF No. 65-3 ¶ 22.  She did not make sexual remarks or engage in unwanted touching of Plaintiff.  *See id.*  Plaintiff agreed each and every time and the record shows no element of coercion whether explicit or implicit.  *Id.* ¶ 23.  Nor was Brubaker's conduct pervasive—it only occurred at a maximum of eight times.  *See id.*

This is not the kind of environment in which an employee is *subjected* to, or forced to endure hostile or discriminatory conduct.  Instead, Plaintiff concedes that each and every time Brubaker asked him to "crack" her back, he did so, without protest or interruption.  Indeed, a single refusal would likely have caused Brubaker to seek back relief elsewhere.  This is not to conclude that this kind of interaction is appropriate in an office setting.  But the Court need not decide that.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (concluding that the

requirements of a hostile work environment claim ensures that "courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory 'conditions of employment'").

The Court's role is only to decide whether a finder of fact is required to determine whether Plaintiff was subjected to a hostile work environment when he was asked to "crack" a coworker's back approximately eight times. *See Anderson*, 477 U.S. at 248. With no disputes of material fact to resolve, the Court may resolve the issues without a jury. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 65) will be granted as to this claim.

3. **Summary Judgment Will Be Granted as to Plaintiff's Constructive Discharge Claim**

Finally, Defendants have moved for summary judgment to dismiss Plaintiff's constructive discharge claim. ECF No. 65-2 at 14–16. Defendants that there is no dispute of material fact that Plaintiff was not constructively discharged from Self Help Movement when Brubaker asked him to "crack" her back. ECF No. 65-2 at 16.[27] *Id.* at 16.

To prove a claim for constructive discharge under Title VII a plaintiff "must show that 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Mandel*, 706 F.3d at 169 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir.1996)). As relevant here, courts determine objectively whether the plaintiff was compelled to resign by looking at factors "including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." *Id.* at 169–70 (citing *Colwell v. Rite Aid*

---

[27] For the reasons stated *supra* at Part IV(A)(2), the Court need not reach Defendants' argument that Plaintiff's "failure to promote" theory cannot form a basis for his constructive discharge claim.

*Corp.,* 602 F.3d 495, 503 (3d Cir.2010)).

Upon review, summary judgment will be granted as to this claim. As discussed, it is undisputed that Plaintiff engaged in consensual physical interactions with Brubaker approximately seven to eight times beginning in August 2023. ECF No. 65-3 ¶¶ 22–23. Further, a rigorous review of the record reveals that Plaintiff did was not threatened with discharge by Brubaker. *See* ECF No. 65-5 at 117. Nor was Brubaker Plaintiff's supervisor. ECF No. 65-3 ¶ 30. The record further reflects that Plaintiff received a raise prior to his resignation. ECF No. 65-5 at 115. Accordingly, no reasonable fact finder confronted with the available evidence could return a verdict for Plaintiff. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 65) will be granted as to this claim.

### C. Plaintiff's Motion for Summary Judgment Will Be Denied

For the reasons stated *supra* at Part IV(B), Plaintiff's Motion for Summary Judgment (ECF No. 62) will be denied.

### V.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' Motion for Summary Judgment (ECF No. 65). The Court will **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 62). The Court will **DENY as moot** Plaintiff's Motion to Recognize Defendant's Admissions as Undisputed Facts (ECF No. 88). The Court will **DENY as moot** Plaintiff's Motion for a Settlement Conference (ECF No. 83). An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**

20